FLORA McALLISTER v. THOMAS W. DEVANE.

*Ejectment — Lappage — Practice.*

1. In a case of lappage, where the party having the junior grant is not in the actual possession of the *locus in quo,* it is not error for the Judge to withdraw the case from the jury and decide it himself.

2. But if the claimant under the senior grant is driven to show actual possession, an issue of fact is raised which must be submitted to the jury.

3. Where one in possession under a claim of title accepts a release of the right of another having an adverse claim, he does not come into possession under the release, and it works no estoppel.

4. The only effect of a conveyance to A of easements to which his land is servient is to extinguish the dominant rights.

CIVIL ACTION for recovery of land, tried at January Term, 1876, of CUMBERLAND Superior Court, before *Buxton, J.*

Plaintiff claimed title and possession of three tracts of land situated on Lock's Creek, Cumberland county, containing 200, 33 and 50 acres respectively. Defendant disclaimed as to all outside of certain lines, within which were included, as plaintiff claimed, parts of each of the said three tracts. Defendant denied plaintiff's right as to residue. Plaintiff read in evidence grants to Alexander McAllister for the said three tracts as follows : a grant for the 200 acre tract dated September 29, 1753 ; the location of this was disputed, but the jury located it as plaintiff claimed, and that is not the subject of the decision : a grant for the 33 acre tract dated March 2, 1775, date of survey March 11, 1774 ; the location of this was also disputed, but on the trial the Court assumed it to be located as plaintiff insisted : a grant for the 50 acre tract about the location of which there was no dispute.

Plaintiff claimed that these grants covered the premises in controversy, which was a mill-pond and a few adjacent acres of land.

Plaintiff read in evidence the will of Alexander McAllister, who died in 1796. He devised to his son Hector the said three tracts and also one-half the saw-mill on Lock's Creek.

Plaintiff read in evidence the will of Hector McAllister, who died in 1810. He devised to his wife Isabel the 200 acre tract "that I live on:" the 50 acre tract and the 33 acre tract except the mill seat and as much as it overflows of the 50 acres.

He also devised to his executors " the aforesaid mill seat and what it overflows, to be sold if my executors see fit, that is to say my part of said mill seat, being one-half."

Plaintiff read in evidence a deed to herself from Isabel, devisee of Hector McAllister, dated January 8, 1858, for the said three tracts of land.

Defendant read in evidence a deed from the executors of Hector McAllister to Thomas Murphy, dated April 30, 1811, conveying among other property, "Also the one-half of a mill seat on Lock's Creek with so much of the land of Hector McAllister's estate as the water raised by the mill may cover, with free privilege of making and enjoying a lumber yard and road from saw-mill to the main road, with a further privilege to dig earth for the purpose of making or repairing said mill-dam off of any of the land devised by Hector McAllister to his successors, to have and to hold the above-mentioned premises, &c., &c "

Defendant read in evidence a certified copy of an abstract of a grant to Malcom Blue for 70 acres, dated 29 Feb., 1775, registered in Cumberland county, Feb. 10, 1876. Also a certified copy of a survey with plot attached for 70 acres for Malcom Blue dated 28 June, 1775, the calls of which correspond with the calls of the above grant. This grant was located without dispute and laps upon the 200 acre tract and the 33 acre tract.

Plaintiff objected to this grant that the date was an impossible one, and that the survey bore date subsequent to the grant, and subsequent to the survey of the grant of the 33 acre tract. His Honor held that the grants operated in the order of their dates, and that to Blue of 29 February, 1775, took effect from and after the last day of February, 1775. Plaintiff excepted.

Defendant read in evidence a deed from Malcom Blue covering the 70 acre grant, dated 19 Oct., 1784, the *habendum* of which was as follows : "To have and to hold the said seventy acres of land, hereditaments, premises hereby granted with the appurtenances and every part and parcel thereof unto the said Thomas Murphy his heirs or assigns, &c."

This, His Honor ruled, conveyed title in fee and plaintiff excepted.

Defendant then connected himself with the title of Thomas Murphy. Located as claimed by the plaintiff, the 200 acre tract lapped on the 33 acre tract, and the 70 acre tract lapped on both the 200 acre and the 33 acre tracts.

The evidence as to possession was, that for 70 years and upwards the plaintiff, and those under whom she claimed resided in a family mansion on the 200 acre tract. The appurtenances to this residence were on the lappage of the 33 acre tract and the 200 acre tract. But these were all outside of the lappage of the 70 acre tract.

There was evidence that Mrs. Isabel McAllister had a tenant who for many years lived on the lappage of the 70 acre tract and the 200 acre tract. The mill-dam and the pond were in part on the 33 acre tract where it lapped on the 70 acre tract. There was also a blacksmith shop near the dam built by Thomas Murphy, which has long since disappeared. Mrs. Isabel McAllister claimed title to the ground where the mill was situated. It was in evidence that the mill-dam was very old ; that there are signs still visible of a burnt mill, which, according to tradition old Al-

exander McAllister and Thomas Murphy had in partnership. There was a new mill and race some 50 yards distant from the old ones which Thomas Murphy built in 1815. This has ever since been in the possession of defendant and those under whom he claims.

Plaintiff was in possession of so much of the 50 acre tract as was not covered by the mill-pond.

At the southern end of the 70 acre tract is situated the old Murphy mansion built by Thomas Murphy 70 years ago, and occupied by the Murphy family ever since.

At the northern end of the same tract which is lapped by the 33 acres, is situated the mill and appurtenances alluded to as built in 1815 and occupied by the Murphys ever since.

The plaintiff's counsel asked for the following special instructions : among others,

That His Honor should charge the jury that the effect of the deed from the executors of Hector McAllister to Thomas Murphy was an estoppel on Thomas Murphy so as to estop him and all claiming under him from denying that Hector McAllister was the owner of one-half of the mill seat it purported to convey. This was refused and plaintiff excepted. His Honor charged that the case involved to some extent the law relating to lappage of grants. In cases of lappage, 1st. If neither grantee is in actual possession the law adjudges the constructive possession in the older grantee. 2nd. If both grantees are in possession under their grants, but neither are seated on the lappage, the law adjudges the possession in the lappage in the older grantee. 3rd. If the younger grantee is in actual possession of the lappage, then the constructive possession of the older grantee is ousted ; and he would have to sue to recover possession.

That the jury need not take the 50 acre tract into account. That tract is conceded to be located and to belong to

plaintiff, and the only interference with it is occasioned by the overflow of water which was fully authorized by the will of Hector McAllister and the deed of his executors to Thomas Murphy, under whom defendant claims.

Neither is it important for the jury to concern themselves about the location of the 33 acre tract. Supposing that tract to be located as claimed by plaintiff, so as to cover the mill property, yet the 70 acre grant, admitted to be located, with which the defendant connected himself, was older than the 33 acre grant and lapped upon it so as to cover the mill property also upon this lappage.

Thomas Murphy had built the present mill, which had been in the Murphy family down to the defendant, a period of 50 or 60 years, as proved by plaintiff's own witnesses. Besides this, the will of Hector McAllister authorized his executors to sell his interest in the mill seat, stated to be a one-half interest, and the executors had sold it to Thomas Murphy. After all this it was out of the question for plaintiff to set up claim to the mill, and in reference to the 33 acres, the defendant was no trespasser. So the jury may confine their attention to the 200 acre tract claimed by plaintiff. Its location is a matter of dispute and the jury must decide. * * In rendering their verdict therefore, it will be the simplest way for the jury to say how they locate the 200 acre tract.

Plaintiff excepted. The jury rendered a verdict, locating the 200 acre tract as claimed by plaintiff and awarding him six pence damages.

Rule for new trial. Rule discharged. Judgment for plain_ tiff, from which plaintiff appealed.

*Messrs. B. Fuller* and *Merrimon, Fuller & Ashe,* for plaintiff. *Messrs. McRae* and *Broadfoot* and *Guthrie,* for defendant.

PEARSON, C. J. His Honor put the case upon the true

point, and in that way reduced it to very narrow limits. We also commended the counsel of the plaintiff for abandoning several points taken in the excitement of the trial in the Court below, which upon reflection he became satisfied were untenable ; a course of that kind, if pursued by the members of the bar in all cases would greatly relieve the members of this Court—indeed it has almost become a necessity by reason of the voluminous records that are sent up.

The "locus in quo" is a mill and a few acres of land appurtenant thereto. It is agreed that the 70 acre tract under which the defendant derives title, covers it, and it is assumed according to the view taken of the case by His Honor, that the 33 acre tract under which the plaintiff derives title covers it also—so as to make a case of "lappage" as it is termed in the books.

No exception is taken to the correctness of the rules laid down by His Honor in respect to the doctrine of lappage ; but plaintiff's counsel excepts,

1. Because His Honor withdrew the case from the jury and decided it himself. This was right provided there was nothing which called for the action of a jury. That is the question. The 70 acre grant is older than the 33 acre grant, and in case of a lap, the law considers the party having the better title to be in possession; unless the party having the junior grant be in the actual possession So without any inquiry as to the actual possession on the side of the defendant, it is sufficient for him to rely upon possession in law, incident to his title, and it is for the plaintiff to show how the title of defendant has been divested, and how it has been passed over to his side.

There was no evidence fit to be left to a jury of a possession by any one on plaintiff's side, since 1815, about which time the old mill was burnt, and there was no evidence of any adverse possession before that time by the McAllisters; they only claimed one-half of the mill and its appurtenances as tenants in common with defendant's side.

Had the defendant been driven to the necessity of show-ing *actual* possession on his side, although the evidence was plenary that actual possession had been held by the defen-dant's side from the date of the building of the new mill and "hitherto up to the commencement of the action." still that would have been an issue of fact which His Honor ought to have submitted to the jury with instructions that if they believe the witnesses the defendant had proved, &c., and if they did not believe the witnesses then the defendant had failed to prove an *actual* possession   The reply is, the *laboring oar was on the plaintiff.*

2. The deed executed by the side of plaintiff, and accepted by the side of defendant, to-wit ; the deed of the executors of McAllister, created an estoppel upon the side of the de-fendant and having accepted title under the plaintiff, the title of the defendant cannot be set up in opposition thereto.

The reply is, at the date of the execution of this deed the defendant's side was in possession under the elder and better title and accepted this deed as a release of a right operating by way of extinguishment of any claim of the plaintiff's side to the one-half of the mill and its appur-tenances which was not intended, and could not have the legal effect of impairing the title of the defendant, but was made in aid thereof and by way of removing all clouds. When one in possession under a claim of title accepts a re-lease of the right of one having an adverse claim he does not *come into possession* under the release, and it works no estoppel, but is looked upon in its legal effect as what is called a " quit claim deed."

3. The deed of the executors of McAllister only conveys the mill and certain easements to which the land is servient, to-wit ; the short road from the mill to the Raleigh road, and the privilege of taking dirt to repair the dam ; reply, the defendant stood in no need of this deed in regard to the land, and in taking it simply extinguished the plaintiff's

dominant right to these easements under which his land was servient by the original agreement, to build the mill on equal shares.

No error.

PER CURIAM.                           Judgment affirmed.