GEORGE W. KITCHEN and others v. GEORGE W. WILSON and others.

*Action to Recover Land—Practice—Answer—Lappage—Possession—Statute of Limitation—Evidence.*

1. An action, wherein plaintiffs claim title in fee to certain land, allege an unlawful entry by defendants and a withholding of the same, and demand restoration of possession and damages. has all the elements of the old superseded action of ejectment and must be governed by the same rules.

2. Where in such case, the defendants in their answer, "disclaiming personal knowledge, say on information and belief that neither the plaintiff nor any one under whom he claims has ever had such possession or title to such tract as to give actual or constructive possession, nor had possession of or title to any portion included in the boundaries now in possession of any of defendants or that was in possession of any of them at the beginning of the action;" *Held*, to constitute a direct and explicit denial of plaintiff's averment of possession.

3. In cases of lapping or interfering conveyances of land, where neither claimant is in actual possession of the interference, the law adjudges the possession to follow the title.

4. The operation of the statute as to the presumption of a grant arising from possession of land is suspended by the issuing of a grant to another, covering the *locus in quo*.

5. The act suspending the statute of limitations from May 20th, 1861, to January 1st, 1870, applies to the presumption of title from adverse possession of land for seven years under color.

6. It is not error to refuse to admit cumulative testimony to prove an undisputed fact.

7. Evidence offered to aid a defective description in a deed or to vary the mathematical lines defined therein is inadmissible for such purpose.

8. In an action to recover land, the conduct and admissions of the deceased ancestor of defendant are not admissible for the purpose of showing the possession of the person under whom plaintiff claims.

(*Baker* v. *McDonald*, 2 Jones, 244; *McAlister* v. *Devane*, 76 N. C., 57; *Williams* v. *Wallace*, 78 N. C., 354; *McLean* v. *Murchison*, 8 Jones, 38; *Brown* v. *Potter*, Busb., 461; *Howell* v. *Buie*, 64 N. C., 446; *Melvin* v. *Waddell*, 75 N. C., 361; *Benbow* v. *Robbins*, 71 N. C., 338, cited and approved.)

CIVIL ACTION to recover Possession of Land tried at Fall Term, 1878, of TRANSYLVANIA Superior Court, before *Avery, J.*

The opinion contains the facts. Judgment for defendants, appeal by plaintiffs.

*Messrs. J. H. Merrimon* and *C. M. McLoud,* for plaintiffs.
*Messrs. T. F. Davidson* and *Reade, Busbee & Busbee* for defendants.

SMITH, C. J. The plaintiffs claim title to the land in dis-

pute under a deed from Beverly Daniel, marshal of the
United States, to George C. Neil, dated December 6th, 1811,
and a deed from the latter to George Clayton, ancestor of
the plaintiffs dated March 10th, 1823, operating as color of
title and possession thereunder. In both deeds the land is
described as being in the county of Buncombe, " beginning
on a small black oak and pointer, on the top of a ridge and
runs 225 poles north to a stake, thence east 256 poles to a
stake, thence 225 poles south to a stake in James and Wil-
liam Davidson's line, thence with their line 174 poles west,
passing their pine corner 82 poles to the beginning, con-
taining 200 acres more or less."

The defendants derive their title under grants from the
state to John Clayton, their ancestor, one dated December

1. Beverly Daniel, Dec. 6th, 1811, A B C D.
2. John Clayton, 100 acre grant, including *locus in quo.*
3. John Clayton, 150 acre grant.
4. John Clayton, home tract.

4th, 1815, on an entry of October 29th, 1814, conveying one

hundred acres, the other dated December 5th, 1818, on an
entry of January 3rd, 1816, conveying one hundred acres.
The jury rendered a special verdict in which they find the
following facts :

The boundaries given in the deeds from Daniel to Neil
and from Neil to George Clayton are correctly laid down in
the plat A, B, C, D, and as appears therefrom, include the
land in dispute. The plaintiffs and those under whom they
claim have been in possession since the year 1820, of so
much of the tract as lies south of the dotted line, marked
thereon and embracing the larger part of it. The grants to
John Clayton and his home tract are also properly located
on the map, and the *locus in quo* lies in the boundaries of one
or both of the two grants from the state. The defendants
and John Clayton have been in actual possession of the
lands defined in the grants, but outside of the plaintiffs'
boundaries since the year 1824, and of a portion of their
land lying within those boundaries, since the year 1869.
The plaintiffs and George Clayton have never been in ac-
tual possession of the lappage or part covered by the con-
flicting claims, until the year 1856, since which time some
of it has been occupied by the plaintiffs. Upon the verdict,
judgment was entered for the defendants.

The plaintiffs' exceptions relate to the exclusion of evi-
dence offered by them on the trial, and to the insufficiency
of the findings of the jury to warrant the judgment that
was rendered. The latter will be first considered.

1. The action is trespass for breaking and entering the
plaintiffs' close and a constructive possession is in law suf-
ficient to sustain it. By reference to the complaint it will
be seen that the plaintiffs claim title in fee to the land de-
scribed in the deed from Neil to Clayton, allege an unlaw-
ful entry thereon by the defendants, in December, 1869, and
a withholding of the same to the time of bringing suit, and
demand the restoration of possession and damages for de-

taining their property. The case made in the complaint has, therefore, all the elements of the old superseded action of ejectment and must be governed by the same rules. But proof of property in the plaintiffs is necessary to their recovery of the land, whether the action be in one or the other form, since the title, if not changed and vested in them by their possession, remains in the defendants under the grants.

2. The allegation of possession of the disputed territory since, and for nine years preceding the year 1823, is not denied in the answer, and the fact is thereby admitted. This objection rests upon a misapprehension of what is contained in the answer of defendants Wilson and others who assert a right to the premises. In the 2nd paragraph of their answer, disclaiming personal knowledge, they say on information and belief, that neither the plaintiff nor any one under whom he claims has ever had such possession or title to such tract as to give actual or constructive possession, nor have they (plaintiff or Neil) or either of them had possession of or title to any portion included in the boundaries now in possession of any of these defendants, or that was in possession of any of them at the beginning of the action; or in which any of these defendants have entered or cut or converted trees or timber. It would be difficult to use words more directly and explicitly denying the plaintiffs' averment, and the issue thus made was very properly left to and disposed of by the jury.

3. The deed from John Clayton to the defendants was inoperative to convey lands then in the adverse occupancy of the plaintiffs. This point was not pressed in the argument for the two-fold reason : (1) The defendants as heirs at law of John Clayton would take by descent if not under his deed; (2) If such adverse possession existed it would have the effect to vest title in the plaintiffs, and their right to recover would be inaffected by the deed.

4. We are now brought to a consideration of the facts determined by the special verdict and their effect upon the conflicting claims of the parties to the land in contest between them. The plaintiffs insist that their actual occupancy for so long a time, below the dotted line, of the land defined in the deeds of Daniel and Neil was in law a constructive possession, co-extensive with the described boundaries, and there being no actual adverse possession above the line, conferred a valid title to the entire tract.

This is correct as to the lands of others embraced within the plaintiff's deeds, upon which they may have made an *actual entry* and thus become liable to the action of the rightful owner, and it is because the owner fails to bring his action and assert his title when he could do so, that after a time his entry is barred, and the possession transfers the title. But the proposition is not correct when applied to lands within the boundaries of the deed, not actually entered upon so as to give a right of action to the owner. As to lands thus situated a different rule prevails and it is held that the title draws possession to it and restricts *pro tanto* the constructive possession under the deed. The numerous cases cited and commented on by the plaintiffs' counsel will be found on examination to be in harmony with the doctrine stated, that in case of lapping or interfering conveyances where neither claimant is in possession of the interference, the law adjudges the possession to follow the title.

In *Baker* v. *McDonald*, 2 Jones, 244, NASH, C. J., concludes the opinion in these words: "The plaintiff having title to the land covered by the grant of 1767 that title drew to it the possession until the defendant by taking actual possession of the lappage gave him a right to bring this action."

In *McAlister* v. *Devane*, 76 N. C., 57, the court approve the following instruction given to the jury: "If both grantees are in possession under their grants, but neither is

KITCHEN *v.* WILSON.

seated on the lappage, the law adjudges the possession in the lappage in the older grantee; if the younger grantee is in actual possession of the lappage then the constructive possession of the older grantee is ousted." The principle is briefly stated in the opinion in the recent case of *Williams* v. *Wallace*, 78 N. C., 354, thus: "When there is no actual occupation shown, the law carries the possession to the real title." And in *McLean* v. *Murchison*, 8 Jones, 38, it is extended so far as to protect a stranger not connecting himself with the superior title, who enters upon the lappage, against the action of the holder of the inferior title.

It was suggested in argument that the plaintiffs' ancestors being in possession under a deed purporting to convey the estate in the entire tract, the statute of limitations began to run from their entry against the state and its operation was not suspended by the successive grants to John Clayton. If the principle is correctly laid down it is not applicable to the facts of the case. The jury find that the plaintiffs' possession of the part below the dotted line commenced in the year 1820, and of the interference in 1856. The grants to John Clayton issued, the first, on the 4th day of December, 1815, and the other, on the 5th day of December, 1818. So no adverse occupancy of any part of the land had begun at the date of either grant and the rule does not apply.

But we do not admit the proposition itself to be well founded in law, and it is in direct opposition to the doctrine declared in *Brown's Heirs* v. *Potter's Heirs*, Busb., 461. In that case the defendants and those under whom they claim, for more than thirty years before the action was brought had been in possession of the upper part of a tract of land with known and visible boundaries and including the *locus in quo*, but of the lappage for a few years only. The plaintiffs derived title under a grant from the state which issued in 1834, after that possession commenced. The opinion of the court is so appropriate to the facts of our case, that we

are content to quote the language of the chief justice and give it without comment. "The court," says NASH, C. J., "instructed the jury that if the defendants had been in possession thirty years before the commencement of this suit, claiming and cultivating it, as deposed to, and claiming to the boundaries, they ought to presume a grant for the same; that the taking out the grant by Brown, there being no actual possession, would not prevent the operation of the presumption. In the *latter part of the proposition there is error;* for if it be true that the issuing of the grant to Brown in 1834 did not stop the running of the presumption as to the land not covered by it, still it certainly must have that effect as to all the land that was covered by it; for at that time the title to the land was in the state, no sufficient length of possession having elapsed to raise the presumption of a grant, and the case in that aspect, presented at the trial, the ordinary one of the lappage of two grants, neither party being in the actual possession of the lappage. The title to the *locus in quo* at the time the action was brought, was in the lessor of the plaintiff and drew to it the possession, which possession was not disturbed until the taking the small portion mentioned in the case."

5. The defendants further rely on their possession of the lappage for more than seven years after their entry in 1856, as having the effect to confer title, and that the act suspending the statute of limitations from May 20, 1861, to January 1, 1870, does not apply. If this interval is eliminated from the computation of time, less than seven years have elapsed up to April 18, 1870, when this action was begun. The construction and operation of this suspending act have been so often before the court that it is needless to say more than that we regard the question of its application to the present case as settled. *Howell* v. *Buie,* 64 N. C., 446; *Melvin* v. *Waddell,* 75 N. C., 361; *Benbow* v. *Robbins,* 71 N. C., 338, and cases therein cited. In the last case the suspending act is held to

apply to the presumption of an easement arising from an adverse user of twenty years.

The remaining exceptions necessary to be disposed of are to the exclusion of evidence. The plaintiffs proposed to prove, 1. That George and John Clayton caused a stone to be placed at C, the end of the second line of the deeds of Daniel and Neil to mark a corner of the tract. 2. A conversation with John Clayton and his recognition of the line from C to D. 3. The declaration of John Clayton pointing out the plaintiffs' line from B to C and from C to D. 4. The survey and running of the line from C to D with the knowledge and privity of John Clayton and his recognition of it as a separating boundary between the tracts, and to show possession in reference to the line.

The court refused to admit the testimony and in our opinion ruled properly in doing so. There was then and there is now no controversy as to the true location of the land comprised in the plaintiffs' deeds, and the lines are expressly found by the jury to be correctly laid down in the plot as contended by the plaintiffs. Cumulative evidence to prove an undisputed fact would have involved a needless consumption of time and the refusal of the court to hear it could do no possible harm to the plaintiffs. If it was offered to aid a defective description in the deeds or to vary the mathematical lines defined therein, it was inadmissible for that purpose and was rightfully rejected.

The evidence last offered of the conduct and declarations of John Clayton looks beyond the establishment of the plaintiffs' lines and proposes to show a recognized possession up to them. It does not appear that the plaintiffs proposed to prove any facts which in law would constitute possession, nor any continuous acts of ownership on the part of himself over the disputed land, from which possession can be legally inferred, but as we understand, conduct and admissions of John Clayton as evidence of George Clayton's possession.

For this purpose the testimony was incompetent. What constitutes a possession sufficient in law to give validity to a defective title is a question of law to be declared upon facts proved, and no such proof was offered.

We have not entered upon the enquiry whether the boundaries of the plaintiffs' land as defined in their deeds are "known and .visible lines and boundaries" required under the former as well as under the existing law, to extend the actual possession of a part to the constructive possession of the whole tract, for the reason that it is not necessary to a decision of the cause. There is no error. The exceptions are overruled and the judgment affirmed.

.No error.     ·                           Affirmed.