LESLIE GAHAGAN v. KEITH GOSNELL AND WIFE, CHRISTINE D. GOSNELL; AND MILBURN GOSNELL AND WIFE, ANNIE SHELTON GOSNELL.

(Filed 19 April, 1967.)

**1. Ejectment § 9—**

Where it appears that a surveyor had surveyed the property and tied in with the description in plaintiff's deed, natural objects and well known corners found by him, and had prepared a map of his survey, the testimony of the surveyor that plaintiff's land lay to the west of a line drawn on the map is based upon his personal knowledge gained from his survey and the natural objects and corners found by him, and is not merely a statement of plaintiff's contentions.

**2. Ejectment § 10—**

Where plaintiff introduces *mesne* conveyances from the State to him and introduces evidence tending to fit the land claimed by him to each of the descriptions in the deeds constituting his chain of title, nonsuit is improvidently entered.

APPEAL by plaintiff from *Campbell, J.,* at August-September, 1966, Regular Civil Term of MADISON County Superior Court.

The plaintiff alleged he was the owner of a tract of land, which included among its calls "with the Agreement Line (made by the Laurel River Logging Company and the Gahagan and Brigman Heirs) to the Martin Shelton Sourwood Corner." That the defendants were trespassing on part of the lands; that he and his predecessor had held the lands under color of title, etc., for more than twenty years and more than seven years; that the acts of defendants constitute a cloud on his title and prayed that he be adjudged the owner of the lands in question and recover $300.00 damage resulting from defendants' trespass.

Defendants denied trespassing on plaintiff's lands saying they were the true owners of all the lands they had occupied.

While not started as a boundary proceeding under G.S. 38-1 *et seq.* the trial developed into a question as to where the east-west dividing line of the contesting parties was.

A surveyor was appointed to survey the lands and contentions of each party. The surveyor representing the plaintiff drew a map of his claims and testified in his behalf. At the conclusion of plaintiff's evidence the Court allowed defendants' motion for nonsuit and plaintiff appealed.

*A. E. Leake, Attorney for the plaintiff appellant.*
*Riddle and Briggs by Bruce B. Briggs, Attorneys for defendant appellees.*

PLESS, J.   The plaintiff introduced a deed from Bonnie Gahagan to him dated August 17, 1964 and recorded in Deed Book 95, page 183, of Madison County Registry. It conveyed a tract of land with a number of calls, one of which was "the Agreement Line" referred to in the statement of facts. After the deed including the description had been read to the plaintiff in the presence of the jury, he said: "I can identify the property that is described in the Deed * * * It is a part of the America Brigman Gahagan land. It is the land described in my complaint. I call that particular tract of land the Bessie Holt Tract." In deeds going back over one hundred years, the plaintiff then offered a connected chain of title, concluding with a State grant in 1796, and as each description was read, he testified that it included what he called his "Bessie Holt Tract."

The plaintiff thus made out a *prima facie* case, meeting the requirements laid down by Justice Ervin in *Paper Co. v. Cedar Works*, 239 N.C. 627, 80 S.E. 2d 665, in which he said, *inter alia;*

> "The several methods of showing *prima facie* title to land in actions of ejectment and other actions involving the establishment of land titles are enumerated in the famous case of *Mobley v. Griffin* (104 N.C. 112, 10 S.E. 142) * * * The plaintiff proves a *prima facie* title to land by tracing his title back to the State as the sovereign of the soil. *McDonald v. McCrummen*, 235 N.C. 550, 70 S.E. 2d 703; *Moore v. Miller*, 179 N.C. 396, 102 S.E. 627; *Caudle v. Long*, 132 N.C. 675, 44 S.E. 368; *Prevatt v. Harrelson*, 132 N.C. 250, 43 S.E. 800; *Mobley v. Griffin, supra; Graybeal v. Davis*, 95 N.C. 508. The plaintiff satisfies the requirements of this method of proving a *prima facie* title when his evidence shows a grant from the State covering the land described in his complaint and *mesne* conveyances of that land to himself. *Power Company v. Taylor, supra;* (196 N.C. 55, 144 S.E. 523); *Buchanan v. Hedden*, 169 N.C. 222, 85 S.E. 417; *Land Co. v. Cloyd,* 165 N.C. 595, 81 S.E. 752; *Deaver v. Jones*, 119 N.C. 598, 26 S.E. 156."

*Mobley v. Griffin, supra,* is probably the most used of all North Carolina authorities in the trial of land suits. In it, Judge Avery, speaking for the court, said:

> "The general rule is that the burden is on the plaintiff, in the trial of actions for the possession of land, as in the old action of ejectment, to either prove a title good against the whole world or good against the defendant by estoppel. *Taylor v. Gooch,* 48 N.C. 467; *Kitchen v. Wilson,* 80 N.C. 191.
>
> "The plaintiff may safely rest his case upon showing such facts and such evidences of title as would establish his right to recover, if no further testimony were offered. This *prima facie* showing of title may be made by either of several methods. Wait & Sedgewick on Trial of Title to Land, sec. 801; *Convell v. Mann,* 100 N.C. 234; Malone Real Property Trials, 83.
>
> "1. He may offer a connected chain of title or a grant direct from the State to himself."

The other methods are not relevant here and are therefore omitted.

In *Sledge v. Miller,* 249 N.C. 447, 106 S.E. 2d 868, the court said: (The plaintiff) "could also carry the burden of proof by showing a connected chain of title from the sovereign to him for the identical lands claimed by him."

The plaintiff further fortified his case through the evidence of his surveyor, Birchard Shelton. Mr. Shelton testified that he had surveyed the questioned land and had drawn a map, which was admitted in evidence, showing the plaintiff's and defendants' claims. He said that the red line on his map running from A to B to C represented the line claimed by the plaintiffs, and that a blue line, 65½ feet to the east of it, represented the defendants' claims. The line appears to be about two-thirds of a mile long, so that a little more than five acres is involved.

Mr. Shelton testified, without objection, "The red line on the map indicates the agreement line between the Brigmans and the Gahagans on one side and the Laurel River Logging Company on the other side. According to the map, the red line from A to B to C represents the Plaintiff's contentions.

"The plaintiff's lands, the Gahagan lands, lie west of the line from A to B and north of the line from B to C. The lands of the defendant, Gosnell, lie to the east of the line from A to B and south of the line from B to C."

He also said, "Mr. Gahagan's land is on the west and north sides of this red line."

While this evidence is to some extent invading the province of

the jury and is far-reaching and all-inclusive, it is nevertheless in the record and without objection. Should the jury accept it, it would sustain a finding that the plaintiff is the owner of the land lying to the west of the red line, which is the result sought by the plaintiff and the sole subject of controversy in the case.

In *Berry v. Cedar Works,* 184 N.C. 187, 113 S.E. 772, the surveyor for the plaintiff testified that the land described in the complaint lay within the boundaries of the State grant, and the defendant excepted on the ground that the question involved one of the vital matters on which the parties were at issue, and that the answer assumed to determine an essential element of the verdict. The court held that this was evidence of a substantive fact which was not incompetent on the ground that the witness invaded the province of the jury.

In *Etheridge v. Wescott,* 244 N.C. 637, 94 S.E. 2d 846, the court said: "It is competent for a witness to state whether or not a deed or a series of deeds cover the lands in dispute when he is stating facts within his own knowledge. *McQueen v. Graham,* 183 N.C. 491, 111 S.E. 860; *Singleton v. Roebuck,* 178 N.C. 201, 100 S.E. 313."

As a part of his chain of title, plaintiff introduced an agreement dated November 30, 1920 between his predecessors in title, who at that time owned the lands in question, and the Laurel River Logging Company. It included the following provision:

> "That the line dividing the tracts claimed by the parties of the first part, or either of them, and the tract claimed by the party of the second part, known as the Little Laurel Tract, and shall be, and is as follows:
>
> "BEGINNING at a stake and white pine stump, said stake and stump standing South 85 deg. 30' East 39 poles from a rock on the West bank of Little Laurel, at its mouth, corner of Will Cook Tract, and runs North 8 deg. West 236.72 poles to a stake and pointers; thence North 26 deg. 20' West crossing Billy King Branch 15 poles from its mouth, and crossing Martin Branch 10 poles from its mouth, and crossing the public road which runs up Martin Branch 10 poles from the bank of Little Laurel Creek 343.11 poles to a stake and pointers; thence East to Will Cook and S. T. Gosnell's sourwood corner."

The last call in this agreement was Cook and Gosnell's sourwood corner, and Mr. Shelton refers to it several times in his testimony. "That southwest corner, identified on the map as point C, is the sourwood corner that was formerly the Martin Shelton sourwood corner and later the Will Cook and S. T. Gosnell sourwood corner.

It is the sourwood corner referred to in these deeds; the Martin Shelton sourwood corner. * * * The agreement line didn't give the measurement over to the sourwood. It gave the bearing but not the distance." He later said: "The sourwood at point C is a perfectly natural sourwood sprout on a sourwood stump. * * * The sourwood corner at point C is known and referred to in some of the deeds as Martin Shelton's sourwood corner. Martin Shelton was my grandfather. I had known of the sourwood corner for some time. It had been there the only sourwood of that size. I run my line there, started one part of it there and ran to B, as shown here on the map. I do know where the southwest corner is."

The survey did not exactly coincide with the calls of the dividing line described above, but the plaintiff calls attention to the fact that the line was established some forty-five years before the present survey, that surveying methods have changed, land was less valuable in 1920 than in 1965, and therefore less care would be used in a survey then, and further, that in this long period of time there would be a major declination of the magnetic bearing. Mr. Shelton testified that he wrote out the description for the Bonnie Gahagan deed in 1964, and that he arrived at it "by getting the book and page of each adjoining tract of land and then got the calls from the lines that adjoined the Bonnie Gahagan land. * * * I surveyed all the lines around the Bessie Holt Tract except from the forks of the creek down to the Beginning corner. This part of the line is in a permanent creek bed. I just platted it in with the creek. I surveyed those other lines. I took the lines of all the adjoining land owners and got the description from them. I took the lines of each tract of land adjoining this Bessie Holt tract and wrote this description."

From the above it appears that Mr. Shelton had surveyed the plaintiff's property, and in doing so had tied in the description with several natural objects and well-known corners such as the Martin Shelton (later known as the Will Cook and S. T. Gosnell) sourwood corner; the "big rock cliff at the mouth of the (Little Laurel) creek with red paint on it, and there was a tree stood close to it that also had red paint on it."

We are of the opinion that when the surveyor testified the Gahagan land is on the west of the red line and that "the plaintiff's lands, the Gahagan lands, lie west of the line from A to B," that it was based upon his knowledge of some of the natural objects and corners, as well as his survey, and was not merely a statement of the plaintiff's contentions.

Taken in the light most favorable to the plaintiff, as we must

upon a motion for nonsuit, the evidence is sufficient to withstand and repel it.

"It is elementary that upon such motion the evidence offered by the plaintiff is to be considered as true, and all reasonable inferences favorable to the plaintiff are to be drawn therefrom." *Supply Corp. v. Scott,* 267 N.C. 145, 148 S.E. 2d 1; 4 Strong's Index, Trial § 21.

The judgment of nonsuit is hereby
Reversed.