E. L. SHERRILL *v.* MARTIN SHERRILL, and others.

One who has the title to a tract of land, who participates in actually misleading another, and induces such other to purchase the land from one who has no title thereto, cannot afterwards assert his title and defeat that of the purchaser.

(The cases of *Devereux* v. *Burgwyn*, 5 Ired. Eq. 351; *Sasser* v. *Jones*, 3 Ired. Eq. 19; *Saunderson* v. *Ballance*, 2 Jones Eq. 322, cited and approved.) And *Cousin* v. *Wall*, 3 Jones Eq. 513; *Hargrove* v. *King*, 5 Ired Eq. 430, cited and distinguished from this.)

CIVIL ACTION, tried before *Mitchell, J.*, at Spring Term, 1875, CATAWBA Superior Court.

The action was brought for the purpose of cancelling a deed, and also to restrain the defendant from bringing suit to recover the tract of land in controversy. The facts in the case are as follows :

In 1852 ,one Nelson Sherrill conveyed in fee to Robert Sherrill, the ancestor of the defendants, a tract of land in the county of Catawba, containing about sixty-two acres. In 1857, Nelson Sherrill conveyed the same land, except nineteen acres, to Elbert Sherrill, the plaintiff, by deed, in fee with warranty.

Nelson Sherrill was introduced as a witness by the plaintiff,

who offered to prove by him that at the time of the conveyance to the said Robert, that the agreement was that the land was to stand good for itself, and if he could not pay for more than nineteen acres, which he then did, he was to surrender the deed to be cancelled.

Afterward, in 1857, he called on the said Robert to pay the balance of the purchase money, which he was unable to do, and agreed to surrender the deed and take a deed for nineteen acres.

This evidence was objected to on the ground that the witness was interested and that it was a transaction between the witness and Robert Sherrill who was dead.

The objection was overruled by the Court, and the evidence admitted.

The plaintiff offered to prove by the witness that only nineteen acres was paid for at $3.00 per acre. The defendant objected to this evidence on the ground that this would contradict the deed made by the witness to the said Robert, and that the deed could not be contradicted by parol evidence. The consideration in the deed was two hundred dollars. The Court overruled the objection and the evidence was admitted.

It was in evidence that after the conversation, as detailed by Nelson Sherrill, that Nelson Sherrill sold the land to the plaintiff Elbert Sherrill, in 1867. Nelson and Robert and Elbert L. Sherrill and the Surveyor, met on the premises in controversy and the land was surveyed, and the deed prepared in the house of the said Robert and signed by Nelson and witnessed by Robert, and a plot for the nineteen acres made by the surveyor. The evidence as to the signature of Robert Sherrill was objected to by the defendant but admitted by the Court.

It was also in evidence that the survey was made by the deed from Nelson Sherrill to Robert Sherrill, and it was the understanding of the witness that Elbert Sherrill knew that Robert Sherrill claimed the land, but the said Elbert testified that he did not know then that Robert had a deed for the land.

The witness further testified that Elbert did not then know that Robert had a deed for the land in controversy, but stated that it was generally known that Robert claimed the land and had been in possession thereof since 1852.

It was stated by the plaintiff, Elbert, in his testimony that he knew that Robert claimed the land and had been in possession thereof for a number of years, cultivating the same. It was further in evidence that after the deed was made by Nelson Sherrill to Elbert Sherrill, that Elbert took possession of the land and had kept it ever since that time.

The defendant's counsel asked his Honor to charge the jury :

1. " That if at the time that Robert Sherrill signed the deed by Nelson Sherrill to the plaintiff as a witness, the plaintiff knew that Robert had a deed from Nelson for the same land, the plaintiff could not recover.

2. That if at the time that Nelson made the deed to plaintiff, and Robert witnessed the same, and plaintiff knew that Robert claimed the land, and had it in his possession cultivating it for a number of years, and plaintiff neglected to inform himself by proper inquiries as to the facts in the case, that he could not recover.

His Honor refused to charge the jury " that the law was that one who knowingly stands by and permits another to purchase his land, shall not be allowed to set up an opposing equity or take advantage of the legal title by which it is supported.

That if Robert Sherrill aided in surveying the land and induced the plaintfff to believe that he was willing that Nelson Sherrill should make him a title, and a deed was made to the land in controversy by his consent, and he witnessed the deed to the said land, he is estopped from denying the plaintiff's title to the land in controversy."

To the refusal of his Honor to charge as requested, the defendants excepted.

The jury returned a verdict for the plaintiff, and thereupon

the defendants moved for a new trial. The motion was over-ruled by the Court, and the defendants appealed.

*Hoke*, for appellants.
*M. S. McCorkle*, contra.

BYNUM, J. In 1852, Nelson Sherrill sold and conveyed a tract of land to Robert Sherrill, under whom the defendants claim. The subsequent facts of the case, as disclosed by the pleadings and the findings of the jury, upon issues submitted to them, are these: Robert Sherrill being unable to pay more of the purchase money than amounted to nineteen acres of the land, it was agreed by parol between Nelson, Robert and Elbert Sherrill, that Robert should retain the 19 acres paid for, and that Nelson, who was entitled to the residue of the purchase money, might sell and convey the remainder of the land unpaid for by Robert, to the said Elbert Sherrill. That in pursuance of this arrangement a surveyor was called in, and all parties being present, the 19 acres were run off, plotted and taken possession of by Robert, who up to that time had been in possession of the whole, under his original purchase; and the residue of the tract was surveyed and deeded by Nelson to Elbert Sherrill with warranty. That the subscribing witness to the deed from Nelson to Elbert, was Robert Sherrill himself, who was present at the whole transaction and assenting thereto. That in pursuance of said purchase and deed, the plaintiff took exclusive possession of the land so bought by him, and has been in the adverse possession thereof ever since, and has at times rented the said land to some of the defendants. That Robert, after the purchase by the plaintiff, set up no claim to the land, but that he is now dead, and that the defendants, who are his widow and children, now set up claim to the land by virtue of the legal title which was outstanding in Robert and by his death devolved upon them, and are threatening the plaintiff with an action for the land. The prayer of the complaint is for an injunction and further relief.

The plaintiff, in his complaint, alleges positively that at the time he purchased he had no knowledge that the legal title to the land was in Robert, and did not believe that he had a deed from Nelson. The answer does not meet this allegation by a positive denial, but responds evasively, by alleging that the plaintiff knew, at the time of his purchase, that Robert "*claimed* title to the land." Claiming a title and having a deed are very different things. It was true, and the plaintiff well knew, that Robert did claim the land up to the purchase by Elbert, but that he knew that the legal title was in Robert is wholly inconsistent with the fact that he recognized the legal title to be in Nelson Sherrill by taking tne deed from him, and that Robert informed him that he had the legal title, or that he desired the plaintiff to understand that he had the legal title, is wholly inconsistent with the fact that he, Robert, not only stood by and permitted one to make a deed to another of lands to which he had no title, and of lands the title to which he knew to be in himself, and that he actively participated in misleading the plaintiff by assisting in running off the land and becoming a subssribing witness to the deed made by Nelson Sherrill. When in addition to this, both Nelson and Elbert Sherrill testify positively that the plaintiff did not know, at the time of the purchase, that a deed had been made to Robert, we must assume as a fact established, that the plaintiff was ignorant of the existence of such deed, and that the conduct of Robert was calculated and intended to mislead the plaintiff in that particular, and did mislead him. The case then presents this question : If one having the title to land intentionally induce another to purchase from one who has no title, can he be permitted, afterwards, to assert his title and defeat the purchaser ? In *Devereux* v. *Burgwyn*, 5 Ired. Eq., 351, the Court says : " If one acts in such a manner as intentionally to make another believe that he has no right, or has abandoned it, and the other, trusting to that belief, does an act which he otherwise would not have done, the fraudulent party will be restrained from asserting his right, unless it be such a case as

will admit of compensation in damages." *Sasser* v. *Jones,* 3 Ired. Eq., 19, was much like the case before us. In that case. Arthur Jones, Sr., executed and delivered to his son, Arthur, Jr., a deed for more than half his estate, consisting of land and slaves. This transaction was concealed from his other children. Two years afterwards the father called all his children together and made a deed of settlement and division of all his estate, including that previously conveyed to the son Arthur, equally among all his children. Arthur, Jr., was present at the making of this deed of settlement and did not make known his older deed and claim, but assented to the deed of settlement and took into possession the property assigned to him under it, Afterwards he brought his action at law and recovered judgment for the property which had been conveyed to him under the first deed. Upon a bill in equity being filed to restrain him from taking out execution upon his judgment, and the hearing of the case upon the pleadings and proofs establishing the foregoing facts, this Court adjudged, not only that the plaintiffs should be quieted in the title and possession of the property claimed by them, but that they should have restitution of whatever was lost by the recovery had against them at law.

*Judge* GASTON put the decision upon the ground that the deed of settlement was one which bound the conscience of the defendant, and which a Court of equity will not permit him to contravene. To the same effect is the case of *Saunderson* v. *Ballance,* 2 Jones' Eq., 322, which is where A, having an unregistered deed for half a tract of land, stands by and sees the same sold at auction by a trustee as the land of another, and permits B to buy it and afterwards to pay the purchase money and take a deed for it from the trustee, under the impression that he was getting a good title for the whole; which impression is well known to A, and he does not disclose his title at the auction sale nor afterwards, before the money is paid; there the concealment was held to be a fraud upon B, and the Court compelled A to convey his moiety to B upon

the repayment of what he gave for such moiety. The cases we have cited differ from *Cousin* v. *Wall*, 3 Jones' Eq., 43; *Claninger* v. *Summit*, 2 Jones' Eq., 513; and *Hargrove* v. *King*, 5 Ired. Eq., 430, in that these latter were cases where the equitable matter and trust preceded the acquisition of the legal estate and was coupled with its acquisition, thus constituting the relation between the parties to be that of trustee and *cestui que trust*, which the Courts will enforce. In the former cases it is seen that the legal title was first acquired, unaffected by fraud or trust, and by matter subsequent became impressed with all those circumstances of fraud and faithlessness which invoke the jurisdiction of equity for the enforcement of the principles of honesty and fair dealing. The statute of frauds does not apply to either class of cases, nor do we see that equity is less reluctant to take hold of one than the other, or when it does take jurisdiction, that it will hesitate to do complete justice.

In our case, Robert Sherrill being unable to pay the purchase money for part of the land, agreed that Elbert Sherrill might take it by discharging him from the debt. The plaintiff accordingly paid the purchase money due from Robert, who was discharged by Nelson from further liability. Nelson, then, who was in equity and good conscience the owner of the land until paid for, executed the deed to the man who had paid him for it, who received the deed under the belief that the title was in his bargainor, and was induced so to believe and act, by the fraudulent conduct of Robert Sherrill. The case, therefore, falls within the principle of *Sasser* v. *Jones* and *Saunderson* v. *Ballance*, where by reason of the fraud, equity will interpose and where, when it does interfere, will not stop halfway, by simply enjoining the party from taking advantage of his legal title, but will go further and do complete justice by compelling the party to do what in equity and good conscience he is bound to do—make his representation specifically good. Adams' Eq., 150; Sugden on Vendors, 262.

The defendants here claim under Robert Sherrill, as privies in estate, and are subject to all equities against him.

The plaintiff is entitled to an injunction, as prayed for, and also to a decree that the defendants execute to him a deed to that part of the land purchased by him.

We have not noticed either the objections raised below to the evidence admitted, or to the instructions asked for, as the counsel for the defendants in this Court, properly enough, desired the case to be decided on the merits.

