J. W. REDMAN and N. BROWN v. STARK P. GRAHAM and wife.

*Delivery of Deed—Estoppel—Evidence—Damages.*

1. The execution of a deed includes delivery, and, therefore, the adjudication of a probate judge that the execution has been duly proved is a judicial determination of the fact of delivery, which cannot be collaterally impeached.

2. The grantors to an unregistered deed for land, who represent the one from whom the grantee seeks to borrow money on the credit of the property conveyed, that the grantee has an absolute and unincumbered title, are estopped to dispute the validity of a mortgage made by him on such property to secure the money so obtained.

3. The exhibition in evidence of such mortgage, in a suit by the mortgagee against the grantors of the mortgagor, to subject the land to the mortgage debt, affords no ground of complaint by the defendants.

4. Conversations between the mortgagor and his grantors, with reference to borrowing the money are admissible to show their complicity in obtaining the loan, and thus estop them from claiming the land.

5. *It seems* that in a case such as the above, the mortgagee would be entitled to recover damages for the use and occupation of the premises from the time of action brought, to be credited on the mortgage debt.

(*Devereux* v. *Burgwyn,* 5 Ire. Eq., 351; *Mason* v. *Williams,* 66 N. C., 564; *Sherrill* v. *Sherrill,* 73 N. C., 8; *Henderson* v. *Lemly,* 79 N. C., 169, cited and approved.)

CIVIL ACTION commenced in Iredell and removed to and tried at Fall Term, 1878, of CATAWBA Superior Court, before *Gudger, J.*

The case is stated by THE CHIEF JUSTICE in delivering the opinion.   Verdict and judgment for plaintiffs, appeal by defendants.

*Mr. R. F. Armfield,* for plaintiffs.
*Mr. M. L. McCorkle,* for defendants.

SMITH, C. J.   The plaintiff, Redman, contracted with the defendants, Stark and Milton Graham, for the purchase of a tract of land at the price of two thousand dollars, whereof he paid four hundred dollars in cash and agreed to pay one thousand dollars the next week and the residue in three months, and took from them a bond to make title when the entire purchase money was paid.   Finding himself unable to meet the second payment, Redman communicated the fact to them and stated if the land was conveyed to him, he could obtain the money as a loan from the plaintiff, Brown. Thereupon a deed for the land was prepared and executed by the said defendants and their wives, the latter being privily examined, and duly proved before the judge of probate and left in his custody.   The deed was afterwards taken from the office by Stark and shown to Redman, who after examining and approving returned it to Stark, saying to him, the deed is all right and we will now go to Brown's and get the money.   The defendant, Milton, who was also present, by direction of his son, Stark, went with Redman, carrying the deed with him to the house of Brown, and there exhibited it to him.   After some conversation, and upon Milton's assurance that the deed was perfectly good, the loan was effected, the money paid to Redman and a mortgage made by him to Brown to secure it.   On the same day, Redman, Milton and Stark, with one Welborn met at a store in the neighborhood, the money was there produced, counted by Milton and handed to Stark.   Stark gave the deed to Redman, the title bond was surrendered, and a note

of $600 executed by Redman to Stark for the unpaid pur-
chase money.  Upon the suggestion of Milton a written
agreement was then entered into, that Welborn should keep
the agreement and deed until the note was paid.  This ar-
rangement was unknown to Brown.  When the note fell
due in February following, Redman went to Welborn's
house prepared to pay it, and finding neither present, pro-
posed to Welborn to have the deed registered and this was
then done.

The foregoing is a brief recapitulation of the evidence
out of which the controversy grows.  The exceptions of the
defendants as they were taken during the trial before the
jury will be noticed in their order:—

The first exception was to the introduction of the mort-
gage deed as evidence.

No reason is stated in the record for the rejection of the
mortgage, and it is certainly material and pertinent to the
issue as to the plaintiffs' title, as well as in connection with
the facts attending its execution, relied on as an estoppel on
the defendants to deny the title.

The second and third exceptions are to the admission of
conversations between Redman and Stark and Milton in
reference to getting the money from Brown, and afterwards
with Stark as to the encumbrances on the land.  The first
conversation tends directly to implicate Stark in the trans-
action of procuring the loan through his own deed lacking
only registration to complete it, and the latter, while per-
haps immaterial, could not have worked any injury to the
defendants.

Three instructions were asked to be given to the jury, one
only of which, as having any pertinency to the issues, will
be considered: Although the deed to Redman may have
been delivered to him with the intent it should thereby take
effect, yet the parties to it were competent to enter into an
agreement before its registration, that it should be held by

a third person as an escrow, and not operate as such until certain conditions were performed, and if such agreement was made and the deed placed in the hands of Welborn, to be held until the note for the remaining purchase money was paid, the deed though afterwards registered in violation of the agreement would not be effectual to pass title to the land.

The court declined thus to instruct the jury and charged as follows : "If the deed was delivered by the defendants, the first issue should be found for the plaintiffs. The law has not prescribed any form in which a delivery must be made, but there must be some act of the parties showing an intent that the paper writing should become operative to pass title. If, however, the deed was placed in possession of Welborn as an escrow, under an agreement made since the mortgage, and by the concurrence and agency of Redman and the defendants, was exhibited to Brown and represented to him as an absolute and perfect conveyance of the land, and upon the faith thereof the money was obtained and the mortgage security given, the defendants would be estopped to deny its effect in conveying title to Brown, and the issue should be found in favor of the plaintiffs."

We see no error in refusing the defendants' prayer, or in the instructions given. The agreement entered into subsequent to the mortgage, whatever may be its binding force among the parties, cannot be allowed to impair or injuriously affect the rights of the mortgagee. The execution of the deed had been proved, and as signing, sealing and *delivery* are essential parts of the execution, the fact of delivery had been, by the act of the defendants, judicially determined in the probate court, and could not in this collateral mode be impeached or controverted by them. But if we are to interpret the agreement to mean that Graham's deed should be withheld from registration until the note was discharged, it would be unavailing as to Brown, and he is not debarred

from taking the benefits of a registration which, for his own protection and against the will of the others, he could have enforced.

But the alternative instruction is not less fatal to the defendants' case. If the evidence of the manner in which the money was procured and the security given is accepted by the jury as proof of the facts, it is a clear case of estoppel, resting not only on Redman but with equal force upon the defendants who co-operate with him and who received and appropriated the fruits of the transaction to their own use. It would be a fraud in them to dispute the effect of their own registered deed and the title conveyed under the mortgage. This is an instance of the beneficent operation of the doctrine of estoppel, in securing good faith and honest dealing among men. If the arrangement disregarding Brown's right had been carried out and the deed kept from registration, the estoppel would have been operative for the protection of the title of the mortgagee, and it must be still more so in defending it from attack when the chain of legal title is made complete by registration.

The principle is thus stated by PEARSON, J., in *Devereux* v. *Burgwyn*, 5 Ire. Eq., 351: "If one acts in such a manner as *intentionally* to make another believe that he has no right; or has abandoned it, and the other, trusting to that belief, does an act which he would otherwise not have done, the fraudulent party will be restrained from asserting his right unless it be such a case as will admit of compensation in damages."

So in *Mason* v. *Williams*, 66 N. C., 564, RODMAN, J., quotes with approval the doctrine as thus laid down by an eminent English judge: "The true rule is that if a man so conducts himself, whether intentionally or not, that a reasonable person would infer that a certain state of things exists, and acts on the impression, he shall be afterwards estopped from

denying it." *Sherrill* v. *Sherrill*, 73 N. C., 8; *Henderson* v. *Lemly*, 79 N. C., 169.

The record does not disclose any exception to the claim for damages, and the issue in regard thereto, though it was strenuously contested in the argument here. It would seem to be reasonable that compensation should be made for the wrongful withholding and use of the premises by the defendants after the action was brought, and we do not see that any more than this was allowed by the jury. There are equities set up in the answer which do not seem to have entered into the controversy or to be embodied in the issues passed on by the jury. They will be briefly pointed out in order that if the parties so elect they may be adjusted and settled in the action. The damages recovered for the use and occupation of the premises should be paid to the mortgagee and credited on his debt, the remainder of which constitutes the first encumberance on the land. Subject thereto, the land will stand charged with the payment of what is due on Redman's note. Upon this basis the final judgment may be made to dispose of all the matters in controversy. There is no error. This will be certified to the court below for further proceedings therein.

No error.                                    Affirmed.