BEAUFORT LUMBER COMPANY v. JOHN B. PRICE et al.

(Filed 26 February, 1907).

1. **Quit-claim Deed—Interest Passed.**—Giving a quit-claim deed is no assertion of title, but a conveyance only of such interest as the maker has in the subject-matter.

2. **Quit-claim Deed—Estoppel in Pais.**—A quit-claim deed for land reciting an invalid tax deed as the source of title, made by the attorney of plaintiff to the defendant, the plaintiff receiving the consideration, is not an equitable *estoppel in pais,* and the plaintiff may assert its rights under a registered deed therefor to the timber growing upon the land.

MOTION by defendants to dissolve injunction, heard by *Shaw, J.,* at October Term, 1906, Superior Court of CRAVEN County. The motion was granted and plaintiff appealed.

The plaintiff company seeks to enjoin the defendants from cutting and removing timber from the land described in the complaint, alleging ownership, etc. Defendants, denying that plaintiff is the owner, aver that they are the owners of said lands and allege that plaintiff threatens to cut and

remove timber, etc. The Court, by consent, found the following facts:

That on 1 June, 1899, one Boyd and his infant children were the owners of the land in controversy, and that the same was listed in Craven County for taxes for the year 1899.

That on 26 October, 1899, for the sum of $100 and the costs of the special proceeding instituted for the purpose, the timber on said land was sold and conveyed to the plaintiff by deed registered on 26 October, 1899.

That on 5 June, 1900, said land was sold for taxes for the year 1899 by the Sheriff of Craven County.

That R. A. Nunn, attorney at law, representing the Beaufort County Lumber Company, purchased the land at said tax sale to protect the timber rights of the plaintiff.

That on 30 January, 1903, the Sheriff of Craven County executed a tax deed for said land to said R. A. Nunn.

That R. A. Nunn, as attorney as aforesaid, on 30 January, 1903, for $25, executed and delivered to the defendants a quit-claim deed for his interest in the property, and that said sum was turned over to the plaintiff.

Judgment was rendered for defendants, and plaintiff appealed.

*Simmons, Ward & Allen* and *Moore & Dunn* for plaintiff.
*W. W. Clark* and *H. C. Whitehurst* for defendant.

CONNOR, J., after stating the case: It is conceded that, by purchasing the standing timber subsequent to the listing of the land for taxation, the plaintiff company took title subject to the lien acquired by the State. It follows, therefore, that the purchaser at the sale by the Sheriff for taxes would, if the law had been complied with, have acquired a good title to the land, including the standing timber. It is also

conceded that more than two years having elapsed between the day of the sale, 25 June, 1901, and the date of the deed, 30 January, 1903, Mr. Nunn acquired no title to either the land or timber. It is expressly provided by sec. 66, ch. 16, Laws of 1899, that the purchaser at a tax sale may, within one year from the date of such sale, call for a deed, and by section 83 that if he shall fail within two years from said sale to demand a deed or institute a suit for foreclosure, the certificate "shall cease to be valid." Revisal 1905, sec. 2905.

The title of Boyd and his children to the land and of the plaintiff corporation to the timber was, therefore, not impaired, nor in any manner affected, by the tax sale or the deed made pursuant thereto. Neither of them have 'executed any deed or paper-writing parting with the title. It is insisted that, as against the defendants, the plaintiff, by the execution of the deed by Mr. Nunn, has lost its title to the timber. It never having had any title to the land, the controversy is limited to the title to the timber.

Defendants, conceding that Mr. Nunn's deed was invalid, and that no interest, right or title passed by it, contend that because of its execution by him in the light of the facts found by the Court, the plaintiff has, by way of estoppel, lost its title, and that it has passed to and vested in them, or at least that plaintiffs are precluded from claiming it.

It is elementary learning that among the other methods by which title to land may pass is that of estoppel. There is probably no doctrine of the law which has received more careful and anxious study, or given the courts more concern in its application than that of estoppel. *Chief Justice Pearson,* in an opinion, evincing much thought and research, says: "According to my *Lord Coke,* an estoppel is that which concludes and shuts a man's mouth from speaking the truth. With this forbidding introduction, a principle is announced

which lies at the foundation of all fair dealing between man and man, and without which it would be impossible to administer law as a system." *Armfield v. Moore,* 44 N. C., 157.

The deed made by Mr. Nunn to defendants contains no words of conveyance, but is carefully restricted to apt words of release, "remise, release, and quit-claim." Out of abundant caution he confines the deed to "all estate, right, title, interest," etc., which he has in or to the premises. In this respect it essentially differs from the language of the deed in *Richardson v. Levi,* 74 Texas, 359, cited by defendants. The deed contains no warranty of title. The distinction, in respect to estoppel, upon the grantor between conveyances, in which it appears, from the language used, that the grantor, either expressly or impliedly, asserts that he is the owner of the land and those in which he, in the same way, indicates that he is conveying only such interest as he may have, is clearly pointed out by *Mr. Justice Walker* in *Hallyburton v. Slagle,* 132 N. C., 947. It is elementary learning that a quit-claim deed operates only as a release of such interest as the maker has, or as may be specifically named. It is for this reason that no estoppel grows out of such a deed. Nothing, in respect to the maker's interest, is asserted. The very terms of the deed puts the purchaser upon notice that he is buying a doubtful title. "In form, a quit-claim deed is like the common-law release—a derivative or secondary common-law form. In substance, it is similar to an original common-law deed creating an estate, and not requiring for its operation any estate in possession or otherwise in the grantee. In effect, it transfers to the grantee whatever interest the grantor has in the property described, be it a fee, chattel interest, a mere license, or nothing at all." 9 Am. and Eng. Enc., 104. It implies a doubtful title in the party executing it.

*Kerr v. Freeman,* 33 Miss., 292. For this reason, subsequently acquired interests do not pass. *McAllister v. Devane,* 76 N. C., 57; *Carson v. Carson,* 122 N. C., 645.

The learned counsel for defendants concedes that, if the Court is of the opinion the deed from Nunn is a quit-claim, no estoppel, by deed, accrues against the plaintiff. He insists, however, that upon the facts found by the Court, an *estoppel in pais,* sometimes called an equitable estoppel, precludes the plaintiff from asserting title against defendants. In *Devereux v. Burgwyn,* 40 N. C., 351, *Pearson, J.,* says: "A right can only be given up by the consent of the party, evidenced by a release. A right can only be lost or forfeited by such conduct as would make it fraudulent and against conscience to assert it. If one acts in such a manner as *intentionally* to make another believe that he has no right, or has abandoned it, and the other, trusting to that belief, does an act which he would otherwise not have done, the fraudulent party will be restrained from asserting his right, unless it be such a case as will admit of compensation in damages. If one stands by or allows another to buy property to which he has the title, he will not, on account of this fraud, be permitted, in a court of equity, to assert his right." The doctrine has been asserted and applied in many cases by this Court. In *Saunderson v. Ballance,* 55 N. C., 322, the defendant was present and heard the purchaser inquire of the former owner whether the title was good, and heard the reply that it was, he saying nothing. The purchaser by such statement was induced to purchase the land "at a full and fair price." *Judge Battle* says: "There can be no doubt that the trustee thought he was selling an undisputed fee-simple in the whole tract of land, *and the bidders were laboring under the same impression."* Defendant was held to be estopped.

In *Mason v. Williams,* 53 N. C., 478, *Judge Battle,* after discussing the authorities, says: "When a person purchases a chattel from another who is not the owner, and it is admitted by the parties, or found by the jury *as a fact,* that the purchaser was induced to make the purchase by the declarations or acts of the true owner, the latter will be estopped from impeaching the transaction." In that case there was a "case agreed," with a provision that the Court should instruct the jury upon the law. His Honor, being of opinion that plaintiff was estopped, charged the jury to find for the defendant. The learned Justice said: "If, then, in the present case, it had been stated as an agreed *fact* that the defendant purchased the steam-engine from Pescud, in consequence of what the plaintiff told Pescud, or in consequence of the conduct of the plaintiff at the time of the sale, we should say that the latter could not recover. That fact cannot, however, be inferred by the Court from anything stated in the case agreed, and it must be left as a question for the jury." The cause was tried at a succeeding term of the Superior Court, and again came to this Court. It is reported in 66 N. C., 564. The Judge submitted the question to the jury upon instructions in accordance with the opinion. From a verdict for defendant, plaintiff again appealed. The entire question was re-argued by eminent counsel, and a majority of the Court held that, as the fact was found by the jury that defendant was induced to make the purchase by the declaration or acts of the plaintiff, he was estopped. The case is thus made to turn upon the fact that he was induced to buy by the conduct of plaintiff. *Pearson, C. J.,* filed a vigorous dissenting opinion, insisting that, upon all of the evidence, there was no estoppel, in which *Justice Dick* concurred and *Justice Boyden* "concurred in the principles set out." In *Holmes v. Crowell,* 73 N. C., 613, *Reade, J.,* said:

LUMBER CO. *v.* PRICE.

"In order to create an *estoppel in pais,* it must appear: 1. That defendant (party sought to be estopped) knew of his title. 2. That plaintiffs did not know and relied upon the defendant's representations. 3. That plaintiffs were deceived." This definition is in exact accord with Bigelow on Estoppel (5 Ed.), 570. Bispham Eq., sec. 289. "The party setting up the estoppel must actually be deceived by the conduct of the other party," citing *Patterson v. Lyth,* 11 Pa., 53. "The principle runs through the whole doctrine of estoppel, that a man is only prevented from alleging the truth when his assertion of a falsehood or his silence has been the inducement to action by the other party." Mr. Pomeroy, after a most exhaustive discussion of the doctrine, says: "Whatever may be the real intention of the party making the representation, it is absolutely essential that this representation, whether consisting of words, actions or silence, should be believed and relied upon as the inducement for action by the party who claims the benefit of the estoppel, and that, so relying upon it, and induced by it, he should take some action. The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it, and thus relying and induced, did take some action." Eq., sec. 811; *Sumner v. Seaton,* 47 N. J. Eq., 103. See, also, *Sherrill v. Sherrill,* 73 N. C., 8; *Humphreys v. Finch,* 97 N. C., 303. The party claiming by estoppel must not only show conduct which was calculated to mislead, but must show affirmatively that he has relied upon the conduct of the party against whom he invokes the doctrine. *Drouin v. Boston, etc., Railroad,* 74 Vt., 343; 16 Cyc., 744.

The defendant's claim is based upon the fact that Nunn, representing the plaintiff, purchased the land at the tax sale to protect the timber interest. That he afterwards executed

the quit-claim deed, releasing, in consideration of $25, all of his right, title and interest, and that he afterwards paid the amount to plaintiff.

Assuming, for the purpose of the argument, that Nunn was acting throughout the transaction as the agent of plaintiff, we fail to discover any act on his part working an *estoppel in pais* against plaintiff. There is nothing in the quit-claim deed asserting any ownership of the land or timber by the plaintiff or himself. In the most unmistakable terms he confines his deed to a conveyance of *his* interest. He sets out his title by referring to the deed under which he claims "being the same land sold on 5 June, 1900, by the Sheriff of Craven County, N. C., to R. A. Nunn, as property listed to Jesse Boyd, as per tax-list 1899." It is impossible to find in this language any representation of title other than that derived from the tax sale. The Court does not find, as a fact, nor is there any finding from which such fact can be inferred, that Nunn was authorized to make the deed, or that any officer or agent of plaintiff made any statement, or by his presence, at the time of the execution of the deed, did any act or was in a position requiring him to speak, which could mislead defendants. Nunn made no statement, either in the deed, or otherwise, calculated to mislead the defendants. On the contrary, he expressly directs their attention to the source of his title and recites that he is releasing only such interest as he has.

It appears that the plaintiff company gave in 1899 more than $100 for the standing timber, and it is admitted in the pleadings that it is now worth that sum, whereas the defendants paid Nunn but $25 for his quit-claim deed for 100 acres of land. This, in the light of the other facts found, is entirely consistent with the conclusion that defendants were, for the inconsiderable sum of twenty-five cents per acre,

taking chances on a tax title. This inference is strengthened by the fact that Nunn got his deed from the Sheriff on the same day on which he made deed to defendants. It does not appear from the finding of the Court that defendants knew that Nunn was the attorney for plaintiff or that he had purchased at the tax sale to protect the title to the timber. In the absence of such finding we do not perceive how defendants could have supposed they were buying the plaintiff's title to the timber. So far as appears, defendants did not know that plaintiff owned the timber. If, for the purpose of this discussion, they be fixed with notice by the registration of the timber deed, they must be understood as purchasing Nunn's title with notice that plaintiffs claimed the timber, which is very far from showing that they supposed they were getting plaintiff's title thereto. If they did not know that Nunn was representing plaintiff, how could they have been induced by his deed to suppose that they were acquiring plaintiff's property? When one claims to have acquired title by estoppel, the burden of proof is upon him to show the facts out of which the alleged estoppel grows.

The case, as stated by his Honor, comes to this: The land belonged to Boyd and his children, the timber to the plaintiff Nunn, who, we will assume, supposed that he had a tax title, sells and executes a quit-claim deed to defendants for such interest, or title, as he has. He purchased at the tax sale, for the benefit of plaintiff, which fact does not appear to have been known to defendants. We are unable to see how any element of an equitable estoppel appears in the transaction. If Nunn had acquired title under his deed from the Sheriff, defendants would have taken it and plaintiff would have lost the timber, not by way of estoppel, but because the lien of the State for tax assessed was prior to the plaintiff's deed. Nunn, having acquired no title and not representing

that he had any, and no one else having, either by words, conduct or silence, made any representation that was untrue, there can be no *estoppel in pais*. The fact that Nunn "turned over" the $25 to plaintiffs is entirely consistent with the other facts. Presuming, as it is fair to do, that he stated to plaintiff at the time of doing so, that he had, in consideration of the amount, executed to defendants a quit-claim deed for his interest in the land, why should the acceptance of it have the effect of passing plaintiff's interest in the timber? By accepting the money, plaintiff undoubtedly ratified Nunn's act—the sale of *his* interest in the land—which was all that he had undertaken to convey. After accepting the money, plaintiff was estopped from disavowing Nunn's act—nothing more.

The only relief asked in the complaint is an injunction restraining defendants from cutting and removing timber. His Honor, upon the trial, dissolved the restraining order and adjudged that defendants "go without day," etc. Pending the appeal, there is no injunction restraining defendants from cutting the timber.

It should be certified to the Court below that in dissolving the restraining order there was error. Plaintiffs may, if so advised, move the Judge having jurisdiction, for a restraining order until the regular term, when such proceeding may be had in accordance with this decision as may be necessary to protect the rights of the parties. *Railroad v. Olive,* 142 N. C., 257.

Reversed.