Opinion by
Morrison, J.,
In this action of replevin the title and right of possession of a certain mare were involved. The evidence clearly establishes that the plaintiff was the owner of the mare for many years, and that on March 27, 1905, he delivered possession of her to James Torrence, under a written bailment. Under certain contingencies, specified in the bailment, Torrence was to return the mare to the plaintiff. Instead of doing this Torrence fraudulently disposed of the mare and left the country. The evidence clearly establishes the fact that the defendants had no title to the mare, and no right to retain possession of her, unless the plaintiff was estopped from asserting his title and right of possession. This is conceded and the learned counsel for the defendants bases his right to a reversal of the judgment on estoppel.
We have carefully examined the record and find that no such question was raised at the trial; no points or requests for instructions were presented to the court, and at the close of *637 the trial counsel for defendants excepted, only, to that part of the charge wherein the court said to the jury, “that as we interpret the contract offered in evidence, as matter of law, we hold that the plaintiff has title to the mare and is entitled to recover,” and a bill of exceptions was sealed. • This excerpt from the charge must be considered in connection with the whole of the charge, because the court based this instruction on findings of fact to be found by the jury.
We think it would be manifestly unfair to reverse the judgment on the ground that the plaintiff was estopped because that ■ question was not raised till after trial and verdict, and it is apparent that it was an afterthought of the learned counsel when he was searching for some ground for reversal of the judgment. But we will examine the question of estoppel as if it had been properly raised.
The plaintiff authorized his son, Stuart T. Martin, to find the mare, if he could, and identify her, and gave him no other authority. The young man found the mare in the possession of Beech Stong, at the barn of his father, John Stong. The complaint is that the young man did not tell Beech Stong that the mare was owned by his father, at that time. Beech Stong testified: “Q. What did Mr. Martin ask you? A. He asked me if we did not have a mare there that we got off of Keenan. I told him I had. He asked me 'could he see her. I told him he could. I took him in the stable and backed her out and showed her to him. He looked the horse over and says: 'My, she looks good.’ He petted her, and talked to the mare a little bit, and turned around and told me: 'If you dispose of this mare, would you let me know where she goes? ’ ” Beech Stong also testified that he had bought the mare and had kept her at his father’s barn and had authorized his father to sell her. Evidently the authority to sell was granted before he saw young Martin. Beech further testified: “Q. You had bought her? A. I had bought her, yes, sir. Q. Did you have any question about your authority to sell her at any time? A. No. Q. Then, what this young man said to you had nothing to do with your selling her? A. No, not at all. Q. Did not mislead you? A. No, not at all.” Beech Stong did say, in answer to *638 a leading question by his counsel, that if the young man had told him he owned the mare he would not have sold her, but in the same breath he said the mare was dealt for before the young man came there, before we knew anything of Mr. Martin at all. “By the Court: Q. You had made arrangements to sell to Zirkman before that? A. I authorized my father. Q. The arrangement to make the sale that subsequently was made was entered into before you saw this young man? A. It was made, and the deposit was on the mare, and waiting for the balance.” Now, John Stong testified that he had sold the mare for his son three or four weeks before young Martin came to see her, and she was being held until the purchasers got the money to pay for her.
Under the above facts, it seems idle to talk about the plaintiff being estopped, for several reasons. The main one is, however, sufficient. There is no evidence in the record that any of the defendants acted on and was misled by anything said or omitted to be said by young Martin. Moreover, the latter had no authority to say anything, except to identify the mare. The evidence raises no question of estoppel, either in fact or in law: Patterson v. Lytle, 11 Pa. 53; Diller v. Brubaker, 52 Pa. 498; Helser v. McGrath, 52 Pa. 531; Brubaker v. Okeson, 36 Pa. 519.
We have carefully examined the cases cited and relied on by counsel for defendants, to convict the court of error in not ruling the case on estoppel, but they do not avail because on the facts the defendants had no case. The evidence strongly established the plaintiff’s right to the mare, and the jury found, under proper instructions, all of the essential facts necessary to entitle the plaintiff to recover. The verdict, in amount, is sustained by the evidence.
The assignment of error is dismissed and the judgment is affirmed.