This is an action to recover a lot of land known as lot No. 7 of the New Lebanon Estate, the plaintiffs being the heirs of Hollowell Old and Wiley McPherson.
The plaintiffs claim under three chains of title:
(1) A grant from the State and a connected chain of title to Richard Morris, and a deed from Richard Morris to the ancestor of the plaintiffs, dated 3 June, 1812, purporting to convey a one-sixteenth interest in the estate. In this chain of title is the deed referred to in Weston v. LumberCo., 169 N.C. 403.
(2) A grant from the State and a connected chain of title to Samuel Payne and a deed from Payne to the ancestor of the plaintiffs, dated 2 June, 1815, purporting to convey a one-thirty-second interest in (162) said estate. In this chain of title is the paper relied on by the *Page 209 
plaintiffs to show title in Payne, the grantor of the plaintiff's ancestor, which reads as follows:
"I Benjamine Jones of Camden State of North Carolina being justly indebted to Samuel Paine, of Richmond, Virginia, in a certain sum of money by bond, bearing date July, 1802 being disposed to secure pay the same, do hereby grant, bargain sell to him Two full Sixteenths of the New Lebanon Estate, being the same that Charles Grice bought under execution against me, and the other is held now by Little in Edenton, And I hereby bind myself my heirs, exors and assigns, to make to said Paine in his heirs exors, and assigns, good complete titles to said two Sixteenths of said New Lebanon Estate, as soon as possible, but on this condition, that if I pay to said Paine, on or before the First day of January, 1807, the sum of Three Thousand Dollars, which sum is to be endorsed on my Bond to him, Then the above to be Void.
IN WITNESS WHEREOF I have hereunto set my hand seal this twenty sixth day of June 1805.
The word "exors" in the 8th line the word "then the above to be void," was inserted (?) in the original before signed.
B. JONES. (Seal)."
(3) A grant from the State and a connected chain of title to Exum Newby and a deed from Newby to the ancestor of the plaintiffs, dated 17 June, 1815, purporting to convey a one-thirty-second interest.
The defendant contends that the deed from Isaac Lamb, sheriff, to Richard Morris, one of the links in the first chain of title, is void, and that the paper set forth as a part of the Payne title is neither a conveyance nor a contract to convey, and that, therefore, these two chains of title must be eliminated.
The defendant then offered in evidence a deed from the ancestors of the plaintiffs to Samuel Weston, dated 10 June, 1812, conveying to said Weston and his heirs one-thirty-second of said estate, and containing a general warranty.
The defendant contends that as the ancestor of the plaintiffs had no title at the time of the conveyance to Weston, with warranty, that this deed operates as a rebutter and destroys the right of action of the plaintiffs under the deed from Newby subsequently acquired.
The plaintiffs also offered in evidence the partition proceeding of the New Lebanon Estate, showing, among other things, that three-fourths of a share (a share being one-sixteenth of the whole) was allotted to McPherson and Old of the timber part of the land, and that lot No. 1 of the untimbered part, consisting of 400 acres, was allotted to Mills (163) *Page 210 
and Josiah Riddick, and then offered in evidence a connected chain of title from Mills and Josiah Riddick to the defendant.
No evidence was introduced tending to prove from whom Mills and Josiah Riddick acquired title, nor as to the extent of their estate.
There was no evidence that the plaintiffs had ever been in possession of the land or had paid taxes thereon or had exercised ownership or claimed any interest therein for one hundred years.
At the close of the evidence his Honor entered judgment of nonsuit, and the plaintiffs excepted and appealed.
after stating the case: The plaintiffs claim the land in controversy as the heirs of Hollowell Old and Wiley McPherson, and as no possession has been shown in the plaintiffs or in those under whom they claim, they must rely on a connected chain of title from the State, or on an estoppel growing out of the proceedings for the partition of the New Lebanon Estate.
The Morris title, relied on by the plaintiffs, may be eliminated at once, as one of the links in this chain of title is the deed from Isaac Lamb, sheriff, to Richard Morris, which was declared invalid by the unanimous opinion of the Court in Weston v. Lumber Co., 169 N.C. 403, and no additional facts appear which would cause us to change the conclusion then reached.
We are also of opinion that the ancestors of the plaintiffs acquired no title from Payne, because the paper relied on to show title in Payne is neither a conveyance nor a contract to convey land then owned. The paper is an acknowledgment of an indebtedness of $3,000 to Samuel Payne, and an agreement to convey two-sixteenths of the Lebanon Estate as security as soon as possible, and as the paper shows itself that the title was then in others, this must mean that he would convey when he acquired the title, and the paper also provides that it shall be void when the indebtedness is paid, and there is not evidence that the maker of the paper ever acquired the title, or that the indebtedness has not been paid, and the presumption of payment arises from the long lapse of time.
This, therefore, leaves for consideration the Newby title, and as to that, the plaintiffs have shown a connected chain of title from the State ending with the deed from Newby to their ancestors in 1815, and (164) upon this title they may maintain this action, unless the *Page 211 
after-acquired title is in Weston, or the right of action has been lost by reason of the fact that their ancestors, when they had no title, conveyed to Samuel Weston in 1812, with warranty, the same interest in the Lebanon Estate conveyed in the deed by Newby of 1815, under which the plaintiffs claim.
The defendant contends that the deed of 1812, with warranty, operates to destroy the right of action of the heirs of the grantors to the after-acquired estate by rebutter, or that it has the effect of passing the title to this estate to the grantee by estoppel.
The distinction between an estoppel, which may exist without a covenant of warranty, and a rebutter, which is dependent upon a warranty (Weeks v.Wilkins, 139 N.C. 217), while questioned in some jurisdictions, has been recognized and established with us since the case of Taylor v. Shafford,11 N.C. 127, in which Henderson, J., says: "The estoppel arises entirely out of the affirmations of matters of fact made in the deed. He (counsel for defendant) has confounded estoppels and rebutters; things essentially different in their nature, although frequently producing the same results. A rebutter operates on the right of action to the estate. It operates as to strangers, as well as between parties and privies, which is a consequence flowing from its operation on the right to the estate. An estoppel operates entirely as to facts; its effect is to conclude the parties from making, and of course proving, the facts to be otherwise than they are stated or acknowledged to be in the deed or other transaction out of which the estoppel arises. My collateral ancestor deprives me of my estate, and makes a feoffment in fee to a stranger, with warranty, and dies; the warranty descends on me as his heir (and this is done under such circumstances as that it does not amount to what is called a warranty commencing by disseisin). In any controversy which I may have with any one in regard to the lands, after the warranty has descended on me, this feoffment and warranty will bar my right of action to the estate."
This authority has been frequently approved, notably in Southerland v.Stout, 68 N.C. 448; Bell v. Adams, 81 N.C. 122; Weeks v. Wilkins,139 N.C. 217.
The authorities are also to the effect, where there is a covenant of warranty, that the deed not only destroys the right of action in the grantor and his heirs to the after-acquired estate by rebutter, but that it also passes the title to the grantee by estoppel by warranty.
Mr. Mordecai in his instructive and valuable law lectures, volume 2, p. 858, says: "I shall take `Estoppel by Warranty' to mean the effect which such covenants have in passing, so to speak, any title to the land which the bargainor in a deed may acquire after the execution of *Page 212 
(165) the deed; and `Rebutter by Warranty,' to mean the effect which such modern covenants have in barring, estopping, or rebutting the heirs of the covenantor, should they assert title to the land conveyed by the covenanting ancestor."
The language in Wellborn v. Finley, 52 N.C. 237, is "transfers the estate"; in Hallyburton v. Slagle, 130 N.C. 487, that the after-acquired title "inures to her benefit" (the grantee in the first deed); in Buchananv. Harrington, 141 N.C. 41, that the after-acquired title "would, by way of estoppel or rebutter, inure to the use and benefit of the defendant, and thereby vest one-half of the entire estate in him"; and in Cooley v. Lee,170 N.C. 22, that the after-acquired estate "should inure to the benefit of her grantee to pass this interest to him by way of estoppel or rebutter."
If, therefore, the deed of the ancestors of the plaintiffs, being with warranty, has the effect of destroying the right of action of the heirs as to the after-acquired title by rebutter, or of passing this estate to the grantee and vesting the title in him by estoppel, in either event the plaintiffs cannot recover against the defendant, although it is neither a party nor a privy to the deed of 1812, because of the rule that the burden is on the plaintiffs to prove title in themselves, and in one case there is no right of action, and in the other there is no title in the plaintiffs as it has vested in the grantee in the deed with warranty.
Note that we are dealing with a claim by the heir, and with a deed which purports to convey the land, and not with one conveying the right, title, and interest of the grantor, as to which a different rule prevails. LumberCo. v. Price, 144 N.C. 53; Coble v. Barringer, 171 N.C. 448.
There is also authority for the position that a deed without warranty, which purports to convey the land, passes an after-acquired title to the grantee; but it is not necessary to decide that question, as there is a warranty in the deed before us.
In Eddleman v. Carpenter, 52 N.C. 618, in which it does not appear there was a warranty, the Court says: "Afterwards, in 1838, when he acquired title by the deed of Abernathy to him, the estoppel was fed so as by the act of law to vest the title in Carpenter in the same manner as if Eddleman had owned the land in 1832"; in Benick v. Bowman, 56 N.C. 315, that a similar deed "took effect (as to after-acquired title), so as to pass the title of the property by way of estoppel"; and in Hallyburton v.Slagle, 132 N.C. 950, "When by his deed the grantor conveys without any of the usual covenants of title, or when by the form or nature of the conveyance he affirms, either expressly or impliedly, that he has a good and perfect title to the land, though, in fact, he has a defective or imperfect title, and he subsequently acquires a good title thereto, such after-acquired title will inure to the benefit of his *Page 213 
grantee by estoppel. Van Rensselear v. Carney, 11 Howard 297; (166)Ryan v. U.S., 136 U.S. 68; 11 Am. and Eng. Enc. (2 Ed.), p. 403; Hagensick v. Castor, 53 Neb. 495; French v. Spencer, 21 Howard, 240."
It is also held that a deed which purports to convey the land transfers the estate as by a fine (Wellborn v. Finley, 52 N.C. 237); that under our registration acts all deeds are put on the same footing as a feoffment (Bryan v. Eason, 147 N.C. 292), and Mr. Rawle in his work on Covenants, sec. 243, in discussing the effect of an estoppel by deed without warranty, says: "Now, it must be carefully observed that by the common law there were two classes of cases in which an estate thus actually passes by estoppel, and two only. The first was where the mode of assurance was a feoffment, a fine, or a common recovery. Such was their solemnity and high character that they always passed an actual estate, by right or by wrong, and, as against the feoffor or conusor and his heirs, not only divested them of what they then had, but of every estate which they might thereafter by possibility acquire, and this doctrine has been applied in modern times. The second was where the assurance was by lease, under which, it will be remembered, estates could take effect in futuro; and the estoppel seems to have been put upon the ground of such having been the contract or agreement between the parties."
If this position is sound — and we would we inclined to so hold if the question was before us — if there was no warranty, the heirs of the grantor could not recover the land under title claimed by descent as against a stranger, for the reason that the after-acquired title would pass to the grantor in the deed by estoppel, and as the heirs would not be the owners of the after-acquired title, they could not recover on it.
It follows, as the ancestor of the plaintiffs had no title at the time of the conveyance to Weston in 1812 with full covenant of warranty, and as this had the effect by way of rebutter of extinguishing the right of action of their heirs under the after-acquired title of 1815, or of passing this title to the grantee in the deed of 1812 by estoppel, the plaintiffs cannot maintain their action under the Newby title, and they must rely upon the proceeding in partition as an estoppel on the defendant.
When we come to consider the effect of the partition proceeding we are confronted by the fact that the plaintiffs have failed to show any estate of inheritance in their ancestors at the time the proceeding was instituted, nor have they shown that Mills and Josiah Riddick, under whom the defendant claims, had an estate of inheritance, and in the absence of proof of these facts the decision in Weston v. LumberCo., 162 N.C. 165, and Weston v. Lumber Co., 169 N.C. 399, in (167) which the same partition proceeding was considered, and in which *Page 214 
it was held that it did not operate to estop the parties from denying that the several tenants in common had an estate in fee, is conclusive against the plaintiffs.
We are, therefore, of opinion that there was no error in the judgment of his Honor dismissing the action at the close of the evidence.
Affirmed.
Cited: Baker v. Austin, 174 N.C. 435; Bailey v. Mitchell, 179 N.C. 103;Crawley v. Stearns, 194 N.C. 17; Woody v. Cates, 213 N.C. 794;Turpine v. Jackson County, 225 N.C. 391.